# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ORANGE INTERNATIONAL TRADING LLC, <br><br> Plaintiff, <br><br> v. <br><br> STEINHAUSER, INC., <br><br> Defendant. | Civ. Action No. 16-11006-DJC |

## MEMORANDUM OF DECISION

**CASPER, J.**                                                              **July 22, 2019**

## I.  Introduction

Plaintiff Orange International Trading LLC ("Orange") brings this lawsuit against Steinhauser, Inc. ("Steinhauser") arising out of claims against Steinhauser that were assigned to Orange by Frutaki Indp. Imp e Exp. Ltd. ("Frutaki") and Total Juice Industra de Sucos LTDA ("Total Juice").  D. 1.  The Court has previously denied Orange's motion for judgment on the pleadings, D. 55, and Steinhauser's motion for summary judgment, D. 58.  D. 78 ("Memorandum & Order").  As resolved in the Memorandum & Order, the Court ruled that Orange had a valid assignment from Total and Frutaki to bring its claims against Steinhauser for unpaid invoices to both entities.  D. 78 at 10.  To the extent that Steinhauser attempted to revisit this ruling now, the Court declines to do.  As identified in the Memorandum & Order, the matter for which there remained disputed issues for trial concerned whether Steinhauser has a valid setoff defense to Orange's claims (validly assigned from Total and Frutaki) for the unpaid invoices.  D. 78 at 5-6,

10-11.

During a two-day bench trial, which began on May 29, 2019, D. 112-13, the Court heard evidence on this remaining issue from Fred Hildebrand of Orange, Carlos Saad of Frutaki and Total Juice and Kay Jacobs of Frutaki BV ("BV") and admitted exhibits proffered by the parties, D. 114, and now issues its findings of facts and conclusions of law regarding same below.

## II.     Findings of Fact

The Court has already recited certain undisputed facts in this matter in the Memorandum & Order denying Orange's motion for judgment on the pleadings and Steinhauser's motion for summary judgment and related motions, D. 78, and incorporates those undisputed findings of fact by reference here. D. 78. The Court addresses here only the facts material to its ruling on the setoff defense.

### Assignment of Frutaki and Total Juice Claims to Orange

1. As previously found in D. 78, Orange is the valid assignee of the claims regarding the total of seven unpaid invoices from Frutaki and Total Juice against Steinhauser. D. 78 at 10.

2. Frutaki and Total Juice assigned their claims to Orange on or about April 4, 2016. Exh. 4.

### Unpaid Invoices Due to Total Juice

3. On the four occasions discussed below, Total Juice invoiced Steinhauser for fruit juice concentrate it delivered to Steinhauser. Exh. 2.

4. Total Juice has demanded payment for the fruit juice concentrate delivered to Steinhauser. 1:60:25-1:61:4.[1]

---

[1] Reference to the trial transcripts are to "[Day]:[page]:[line]."

5. Steinhauser admits it has not made payment on the goods Total Juice delivered to Steinhauser. D. 11 ¶ 27 (admitting that there were "four (4) Total Juice concentrate purchases which were not paid for by Steinhauser" as alleged in D. 1 ¶ 27).

6. The four occasions on which Total Juice invoiced and shipped juice concentrate to Steinhauser and for which Steinhauser has still not paid are as follows:

| Invoice # | Date | Product Type | Amount (USD) |
|---|---|---|---|
| 001/2014 | 10/5/2014 | Brazilian Frozen Concentrate Orange Juice | $47,949 |
| 002/2014 | 10/5/2014 | Brazilian Frozen Concentrate Orange Juice | $47,025 |
| 003/2014 | 10/5/2014 | Brazilian Frozen Concentrate Orange Juice | $45,375 |
| 006/2014 | 10/12/2014 | Brazilian Frozen Concentrate Orange Juice | $35,763.75 |
| | | **TOTAL** | **$176,112.75** |

Exh. 2.

### Unpaid Invoices Due to Frutaki

7. On the three occasions discussed below, Frutaki invoiced Steinhauser for fruit juice concentrate it delivered to Steinhauser. Exh. 1.

8. Frutaki demanded payment for the fruit juice concentrate delivered to Steinhauser. 1:126:19-1:127:8.

9. Steinhauser admits it has not made payment on the goods Frutaki delivered to Steinhauser. D. 11 ¶¶ 20-21 (admitting that "Frutaki has made demands for payment" and that "Steinhauser has failed to make payment to Frutaki" on these invoices as alleged in D. 1 ¶¶ 20-21).

10. The three occasions on which Frutaki invoiced and shipped juice concentrate to Steinhauser and for which Steinhauser has still not paid are as follows:

| Invoice # | Date | Product Type | Amount (USD) |
|---|---|---|---|
| 080/2014 | 9/28/14 | Brazilian Frozen Concentrate Orange Juice | $47,124 |

| 081/2014 | 10/2/14 | Brazilian Frozen Concentrate Orange Juice | $45,936 |
| 082/2014 | 10/1/14 | Brazilian Frozen Concentrate Orange Juice | $45,441 |
| | | **TOTAL** | **$138,501** |

Exh. 1.

### As to Steinhauser's Setoff Defense

11. Carlos Saad formed Frutaki in 2011. 2:21:22-23.

12. After that time, Frutaki entered into a joint venture with a company called BV and Frutaki began shipping its juice to BV. 1:70:22-1:71:6; see Exh. 5.

13. Saad worked directly with Kay Jacobs ("Jacobs"), who was the General Manager/Managing Director of BV. 1:70:20-1:71:6; 2:73:1-14; see D. 61 ¶ 2.

14. Sometime in 2013, BV loaned monies totaling $780,169.18 to Frutaki (the "2013 Loan"). 2:8:8-18; Exh. 9.

15. On or about February 1, 2013, Saad confirmed in writing that Frutaki had received the 2013 Loan by noting that Frutaki "received the amount of $780.169,18 US$ of payments from the company Frutaki BV and Tradework BV in the Netherlands as prepayments for product to be shipped ex [Frutaki] Brazil." Exh. 9.

16. Saad further confirmed that this money would be returned "either by supply of product with additional payment or by deductions on future shipments," with the proviso that such deductions "may not start before the year 2014." Exh. 9.

17. In 2013 and 2014, Frutaki provided some fruit concentrate to BV that was too bitter to be brought to market unless it was blended with higher-quality product. 2:25:13-21, 2:92:20-2:93:5.

18. The financial stress caused by Frutaki's bitter product, coupled with developments in the market for juice products, caused BV to look for an entity that could provide additional

financing for its business. 2:94:2-9.

19. Saad and Jacobs of BV, among others, began meeting with Steinhauser about fulfilling that role for BV in 2013. 1:93:4-10, 2:95:8-2:96:5.

20. BV chose Steinhauser to act as a collection and shipping agent on BV's behalf. 2:109:6-12, Exh. 17.

21. In or around 2013, Frutaki began shipping some product to Steinhauser directly as part of the joint venture with BV. 2:27:1-3, Exh. 17.

22. Although Frutaki shipped products to Steinhauser, it continued to negotiate the terms of such shipments with BV. 2:27:16-19, 2:97:22-2:98:3.

23. In or about September 2014, Saad decided to switch from shipping product to Steinhauser from Frutaki to shipping it from the company Total Juice. 1:124:12-24.

24. Saad was in charge of sales and everything else related to customers and communications with clients at Total Juice. 1:128:17-21.

25. In a September 16, 2014 email from Saad to BV and Steinhauser personnel, Saad indicated that the switch from Frutaki to Total Juice was a change in name only, writing: [I]'m ready to ship now by total juice. [T]his week all the docs were by Frutaki, but all the containers for next week we can change. It will be better for us, in order to stop the Frutaki Brazil operation with the banks." 1:133:9-13, Exh. 10.

26. On October 25, 2014, Saad sent an email to various people at Steinhauser acknowledging the 2013 Loan and his willingness to repay the loan, partly through discounts on shipments, "regardless of who was the exporter (Frutaki, Total Juice or another company)." Exh. 15.

27. Also on October 25, 2014, Saad wrote to Jacobs of BV. Saad acknowledged the 2013 Loan and his understanding and agreement that amounts owing to BV could be repaid through

"discounts" to Steinhauser. Ex. 11. Saad stated that he was willing to repay the amounts owed to BV through additional discounts, as outlined in a proposed business plan, but that he no longer could export as Frutaki. Id.

28. On or about October 28, 2014, BV and Steinhauser exchanged communications attaching a reaffirmation of the 2013 Loan, from February 1, 2013, writing that Steinhauser would arrange freight and delivery of goods from Frutaki on behalf of BV and would pay Frutaki's invoices as instructed by BV, including instructions as to deductions for the repayment of the 2013 Loan. 2:109:1-12, Exh. 17.

29. On October 31, 2014, Saad wrote to Jacobs of BV and others stating "I acknowledge the debt that has Frutaki BR with Frutaki BV around US$ 780 K . . . . Again, I would remind you that I never said I would not pay this debt and help the Kay [Jacobs] as need be." Exh. 7. Saad also wrote that he needed to be paid for the seven containers at issue for his plan to pay the debt to go ahead. Id.; see 1:139:13-1:141:6.

### III. Conclusions of Law

30. Pursuant to Mass. Gen. L. c. 106 § 9-404(a), in relevant part:

> Unless an account debtor has made an enforceable agreement not to assert defenses or claims . . . the rights of an assignee are subject to: (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

31. The "key question" for courts to determine in considering the validity of an assignee's setoff defense "is whether the right to setoff 'accrue[d] before the account debtor receive[d] a notification of the assignment.'" Timothy Dean's Inc. v. White (In re Timothy Dean Rest. & Bar), 342 B.R. 1, 20 (Bankr. D.D.C. 2006) (assessing setoff defense under District of Columbia

analog to Mass. Gen. L. c. 106 § 9-404). "If the right accrues prior to the notice of the assignment, the setoff is valid against the assignee as well; if not, the account debtor may not setoff [its] claim against the assignee." Id.

32. Accordingly, here, to assert a setoff defense against Orange, Steinhauser must show that it had a valid claim against Orange's predecessors in interest, Frutaki and Total Juice, and that this claim accrued before Steinhauser had notice of the assignment from Frutaki and Total Juice to Orange.

33. Here, the Court considers the assignment of BV's claims under the 2013 Loan to Steinhauser. "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires the right to such performance." A.J. Properties, LLC v. Stanley Black & Decker, Inc., 469 Mass. 581, 586 (2014) (quoting RESTATEMENT (SECOND) OF CONTRACTS, ch. 15, topic 2, § 317(1) (1981)). "Generally, to constitute an assignment there must be a purpose to assign or transfer the whole or a part of some particular thing, debt, or chose in action, and the subject matter of the assignment must be described with such particularity as to render it capable of identification. No greater particularity, however, is required than is actually necessary to do this, with the aid of the attendant and surrounding circumstances." 6 C.J.S. Assignments § 44; see City of Bos. V. Aetna Life Ins. Co., 399 Mass. 569, 572 (1987) (explaining that "[t]he word 'assign' or 'assignment' need not be used to make an effective assignment" and that "a 'valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee owner of a claim'" (citation omitted)).

34. Considering the totality of the circumstances presented by the evidence, including Saad's acknowledgment of liability under the 2013 Loan in connection with the shipments now at

issue, the Court concludes that BV assigned its right to repayment of the 2013 Loan to Steinhauser through one or more actions and writings between February 2013 and October 2014. Specifically, BV and Steinhauser (and Saad on behalf of Frutaki and then Total Juice) agreed in 2013 that Steinhauser would pay for Frutaki and Total Juice's shipments as instructed by BV, which instructions could take into account the 2013 Loan. By October 2014, BV instructed Steinhauser not to pay the seven invoices at issue in this action, as an offset for the 2013 Loan.

35. These circumstances demonstrate an effective assignment of BV's rights with respect to the 2013 Loan, whether characterized as (a) an assignment in or around February 2013 with respect to payment instructions that would be forthcoming from BV or (b) an assignment in October 2014 with respect to BV's specific instructions as to the outstanding invoices now at issue. In either event, the assignment took place before April 2016, such that Orange's claims (arising from the Frutaki and Total Juice assignment in April 2016) against Steinhauser may be offset by amounts due under the 2013 Loan to Steinhauser. Mass. Gen. L. c. 106, § 9-404(a); see United California Bank v. E. Mountain Sports, Inc., 546 F. Supp. 945, 964 (D. Mass. 1982) (noting that "[b]ecause these claims accrued before EMS received notice of the assignment . . . the claims may be asserted as offsets against UCB's claim"), aff'd, 705 F.2d 439 (1st Cir. 1983).

36. Steinhauser's rights and defenses apply equally with respect to Frutaki and to Total Juice, which was the alter ego of, and successor to, Frutaki. See Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359 (1997) (noting that a predecessor company's liabilities imposed upon successor where one or more of the following is present: (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or

consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor).

37. Because the amounts due under the 2013 Loan exceed the amounts due under all of the invoices in question, Orange is not entitled to any recovery on the invoices from Steinhauser.

## IV.   Conclusion

In light of the aforementioned findings of fact and conclusions of law, the Court shall enter judgment for Defendant Steinhauser on Plaintiff Orange's claims for breach of contract and goods sold and delivered as to Frutaki (Counts I and II) and claims for breach of contract and goods sold and delivered as to Total Juice (Counts I and II) against Steinhauser.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge